MR. JUSTICE ERICKSON
concurring in part and dissenting in part:
I respectfully concur in part and dissent in part.
Colorado, by constitutional fiat, has granted the power to issue advi *210 sory opinions to its Supreme Court. Colo. Const. Art. VI, sec. 3. See also Stevens, Advisory Opinions — Present Status and Evaluation, 34 Wash. L. Rev. 1 (1959).
The interrogatories submitted by the Governor present important questions concerning the sufficiency of legislative enactments and gubernatorial vetoes. Both parties contend that the other’s actions fail to comply with the procedures contained in and required by our constitution. The procedures challenged in this proceeding were not initiated by the present Governor and legislature, but represent accepted practices which have been followed for a number of years and which have not been challenged. This court, consequently, is placed in the position of deciding not only whether certain bills acted upon by the present Governor and legislature were validly enacted and vetoed, but also, whether other statutes enacted over the last 25 years are valid.
The constitutional provisions at issue are clear, unambiguous and mandatory in nature. Article 4, Section 11, of our constitution provides that unless the governor returns a vetoed bill with his objections to the house of origin within ten days, the bill becomes law in the same manner as if he had signed it. If the General Assembly, by their adjournment, prevents the return of a bill within ten days, the governor must file the vetoed bill with his objections in the office of the secretary of state within 30 days after such adjournment or the bill becomes law. Similarly, Article 5, Sections 22 and 23, clearly require that final legislative votes on a bill must “be taken by ayes and noes and the names of those voting be entered on the journal.”
Strict interpretation of the constitutional provisions involved in this case requires the conclusion that both the executive and legislative branches of government have failed to comply with the letter of the constitution. The Governor has failed to return several vetoed bills within the time limitations imposed by the constitution and the legislature has not taken all votes on final passage by “ayes and noes.” Although they have not complied with the letter of the constitution, both parties seek a determination that their actions substantially complied with the Colorado constitution. In my view, clear and easily understood constitutional provisions must be complied with and lack of strict compliance may not be routinely excused.
The Governor takes the position that the purpose of the timely filing requirements is satisfied by publication of his veto regardless of timely filing. Public notice alone, however, is incapable of satisfying the constitutional mandate. The constitution does not permit the Governor to publicize the fact of his veto and thereafter file the vetoed bill with the house of origin “within ten days or a reasonable time.” The constitution is concerned only with timely filing in the prescribed manner. The purpose or purposes intended to be accomplished by filing can be satisfied only by *211 strict compliance. The correctness of this interpretation is evidenced by the fact that statutory certainty is achieved only if timely filing occurs and interested parties are able to accurately ascertain the status of a given bill. The majority opinion applies a similar interpretation to the meaning of the constitution’s veto provisions, and, therefore, I concur in the majority opinion to this limited extent.
Similarly, the Senate contends that the constitutional provisions concerning its voting procedure have been satisfied. Reliance is placed upon legislative journals wherein the names of the legislators and their votes are recorded. The Senate, however, does not dispute the evidence before this court which reveals that the legislators are not called upon individually to verbally respond “aye or no” during the final vote. The practice actually employed involves bill passage upon a vote based upon previous roll calls. Absent members, who previously had been present, are counted as voting affirmatively. While such a procedure may be constitutionally sufficient for first and second legislative readings, the constitution requires that the final passage votes be “taken by ayes and noes.” Mere entry of “ayes and noes” in the journals does not suffice where it is clear that an individual “ayes and noes” vote has not been taken.
Strict construction of the constitutional provisions, as set forth above, would cast doubt not only upon the validity of bills presently before the court, but upon numerous bills considered and acted upon by previous governors and legislators. The parties have stipulated that from 1957 to 1976, two preceding governors of this state filed 42 percent of their 30-day, post-adjournment vetoes outside the time limitations contained in our constitution. Similarly, numerous bills which are contained in our statutory compilations were enacted without compliance with the constitutional voting provisions.
It is obvious that retroactive application of a strict constitutional construction, while correct as a matter of law, would create uncertainty, administrative confusion, and would further burden our courts. The functional, purpose-oriented interpretation of the constitution advanced by the parties must also be rejected. First, it would open the door to all branches of government to take a casual, substantial compliance approach to actions mandated by our constitution. Secondly, the court cannot permit the executive and legislative branches to amend constitutional provisions which are clear, unambiguous, and mandatory in nature.
A realistic approach to the issues before this court offers the most reasonable result. Both the executive and legislative branches have acquiesced in the validity of the gubernatorial veto and legislative voting practices. The governor has considered and acted upon bills not enacted according to the letter of the constitution and the legislature has attempted to override gubernatorial vetoes which also failed to comply with the letter of the constitution. Both branches of government in the past *212 have concerned themselves with the substantive action intended and have not been overly concerned with procedural requirements. Neither can now object to the others’ failure to comply with the letter of the constitution.
I would, therefore, hold that past enactments and vetoes, which were carried out in accordance with heretofore non-controverted legislative and gubernatorial practices, are valid, and direct both the Governor and the legislators to comply with the letter of the constitution, as interpreted herein, prospectively, See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).
Prospective application should be afforded to the constitutional principles announced in this case to prevent disruption of what was conceived, and recognized, to be the law, as well as to provide stability to the acts of the executive and legislative branches of government. In my view, only the prospective approach provides a sound constitutional basis for the resolution of this case, while, at the same time, minimizing or eliminating the impairment of the stability of past legislative and executive acts. R. Keeton, Venturing To Do Justice, Harvard University Press (1969); R. Traynor, La Rude Vita, La Dolce Giustiza; or Hard Cases Can Make Good Law, 29 U. Chi. L. Rev. 223 (1962).